1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT A**

MCLAREN AUTOMOTIVE INC.'S NOTICE OF REMOVAL TO THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1332
DIVERSITY OF CITIZENSHIP JURISDICTION



## Service of Process Transmittal Summary

**TO:**    Patrick Dahlberg
MCLAREN AUTOMOTIVE, INC.
1405 S BELT LINE RD STE 100
COPPELL, TX 75019-4955

**RE:**    **Process Served in California**

**FOR:**    McLaren Automotive, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: YANG ZHOU, an individual // To: McLaren Automotive, Inc. |
| **CASE #:** | 26CV484425 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/20/2026 at 12:53 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Patrick Dahlberg  pat.dahlberg@mclaren.com |
| | Email Notification,  Nick Ball  nick.ball@mclaren.com |
| | Email Notification,  George Chon  george.chon@mclaren.com |
| | Email Notification,  Venus Millican  venus.millican@mclaren.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 866-539-8692 |
| | CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:** Tue, Jan 20, 2026
**Server Name:** Jimmy Lizama

| | |
|---|---|
| Entity Served | MCLAREN AUTOMOTIVE, INC. |
| Case Number | 26CV484425 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

E-FILED
1/14/2026 2:20 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
26CV484425
Reviewed By: T. Flores
Envelope: 22274082

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MCLAREN AUTOMOTIVE, INC., a Delaware corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
YANG ZHOU, an individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* |
|---|---|
| Downtown Superior Courthouse<br>191 North First Street<br>San Jose, CA 95113 | **26CV484425** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Michelle Yang, Esq. (SBN 325467)    Hannah C. Theophil (SBN 334178)    6420 Wilshire Blvd., Suite 1400, Los Angeles, CA 90048    (310) 758-1283

| DATE:<br>*(Fecha)* | 1/14/2026 2:20 PM | Clerk of Court | Clerk, by<br>*(Secretario)* | T. Flores | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served



1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*:   Mclaren Automotive, Inc., a Delaware corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

**PRESTIGE LEGAL SOLUTIONS, P.C.**
Michelle Yang, Esq. (SBN: 325467)
Hannah C. Theophil, Esq. (SBN 334178)
6420 Wilshire Blvd., Suite 1400
Los Angeles, CA 90048
Telephone: (310) 758-1283
Fax: (310) 933-5821
Electronic Service: eservice@plsfirm.com

Attorneys for Plaintiff,
**YANG ZHOU**

E-FILED
1/14/2026 2:20 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
26CV484425
Reviewed By: T. Flores

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

YANG ZHOU, an individual,

Plaintiff,

vs.

MCLAREN AUTOMOTIVE, INC., a Delaware corporation

Defendant.

Case No.: 26CV484425

Hon.
Dept.:

**COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS**

JURY TRIAL DEMANDED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRESTIGE LEGAL SOLUTIONS, P.C.
6420 WILSHIRE BLVD. SUITE 1400, LOS ANGELES, CA 90048

Plaintiff Yang Zhou ("Plaintiff") alleges as follows:

**PARTIES**

1.    As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff Yang Zhou.

2.    Plaintiff Yang Zhou is, and at all times relevant herein was, a resident of Sunnyvale, California.

3.    As used in this Complaint, the word "Defendant" shall refer to Defendant .

4.    Defendant Mclaren Automotive, Inc., is and at all times relevant herein was, a incorporated under the laws of the State of Delaware and registered to conduct business in California. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, assembling, producing, constructing, marketing, distributing, and/or selling consumer goods, including but not limited to motor vehicles and motor vehicle components.

5.    Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names "DOES 1 to 10". These Defendants are sued pursuant to Code of Civil Procedure section 474. When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

6.    Plaintiff hereby revokes acceptance of their 2024 Mclaren Artura , VIN SBM16AEA9RW002065 ("Subject Vehicle").

7.    Plaintiff hereby demands a jury trial on all causes of action asserted herein.

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2**

8.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

9.    On or around July 03, 2024, Plaintiff leased Subject Vehicle. The Subject Vehicle was manufactured and/or distributed by Defendant. The Subject Vehicle was a new motor vehicle within the meaning of Civil Code Section 1793.22(e)(2) at the time Plaintiff purchased it.

*Left margin vertical text:* PRESTIGE LEGAL SOLUTIONS, P.C. 6420 WILSHIRE BLVD. SUITE 1400, LOS ANGELES, CA 90048

10.    Plaintiff leased and used Subject Vehicle primarily for personal, family, or household purposes. Plaintiff leased Subject Vehicle from a person or entity engaged in the business of manufacturing, distributing, selling, or leasing consumer goods at retail.

11.    When the Subject Vehicle was leased, Plaintiff received express written warranties in which Defendant undertook to preserve or maintain the utility or performance of Subject Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time.    The warranty provided, in relevant part, that in the event a nonconformity developed within Subject Vehicle during the applicable warranty period, Plaintiff could deliver Subject Vehicle for repair to Defendant's authorized service and repair facilities and Subject Vehicle would be repaired.

12.    During Plaintiff's ownership of Subject Vehicle, the Subject Vehicle manifested defects covered by Defendant's express written warranties. These defects include but are not limited to: electrical system defects (Subject Vehicle's "defects"). These defects substantially impair the use, value, and/or safety of Subject Vehicle to Plaintiff.

13.    Plaintiff delivered Subject Vehicle to Defendant and/or its authorized service and repair facilities for diagnosis and repair of the defects.

14.    Defendant and/or its authorized service and repair facilities failed to service or repair Subject Vehicle to conform to the applicable express warranties after a reasonable number of opportunities to do so.

15.    Despite this fact, Defendant failed to promptly replace Subject Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2(d).

16.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under Civil Code section 1793.2(d), and therefore brings this cause of action pursuant to Civil Code section 1794.

17.    Defendant's failure to comply with its obligations under Civil Code section 1793.2(d) was willful, in that Defendant and its representatives knew of their legal obligations and intentionally declined to follow them.    Accordingly, Plaintiff is entitled to a civil penalty of up to two times Plaintiff's actual damages, pursuant to Civil Code section 1794(c).

PRESTIGE LEGAL SOLUTIONS, P.C.
6420 WILSHIRE BLVD. SUITE 1400, LOS ANGELES, CA 90048

PRESTICE LEGAL SOLUTIONS, P.C.
6420 WILSHIRE BLVD. SUITE 1400, LOS ANGELES, CA 90048

1

2
**SECOND CAUSE OF ACTION**

3
**BY PLAINTIFF AGAINST DEFENDANT**

4
**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

5
18.    Plaintiff incorporates by reference the allegations contained in the paragraphs set

6
forth above.

7
19.    Defendant maintains service and repair facilities and/or designates independent

8
service and repair facilities (Defendant's "representatives"). Defendant's representatives are

9
intended to carry out the terms of Defendant's express warranties.

10
20.    Although Plaintiff presented Subject Vehicle to Defendant's representatives in

11
this state for repair of Subject Vehicle, Defendant and/or its representatives failed to commence

12
repairs within a reasonable time, in violation of Civil Code section 1793.2(b).

13
21.    Although Plaintiff presented Subject Vehicle to Defendant's representatives in

14
this state for repair of Subject Vehicle, Defendant and/or its representatives failed to complete

15
repairs within thirty days, in violation of Civil Code section 1793.2(b). Plaintiff did not extend

16
the time for completion of repairs beyond the requisite thirty days.

17
22.    Plaintiff has been damaged by Defendant's and/or its representatives' failure to

18
comply with Civil Code section 1793.2(b). Thus, Plaintiff brings this cause of action pursuant

19
to Civil Code section 1794.

20
23.    Plaintiff has rightfully rejected and/or justifiably revoked acceptance of Subject

21
Vehicle and has exercised their right to cancel the contract. By serving this Complaint, Plaintiff

22
does so again.

23
24.    Defendant's failure to comply with its obligations under Civil Code section

24
1793.2(b) was willful, in that Defendant and its representatives knew of their legal obligations

25
and intentionally declined to follow them. Accordingly, Plaintiff is entitled to a civil penalty of

26
two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

27
///

28
///

3

**COMPLAINT; JURY TRIAL DEMANDED**

PRESTIGE LEGAL SOLUTIONS, P.C.
6420 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90048

1

2              **THIRD CAUSE OF ACTION**

3           **BY PLAINTIFF AGAINST DEFENDANT**

4    **VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

5          25.    Plaintiff incorporates by reference the allegations contained in the paragraphs set

6    forth above.

7          26.    In violation of Civil Code section 1793.2(a)(3), Defendant failed to make

8    available to its authorized service and repair facilities sufficient service literature and/or

9    replacement parts to effect repairs during the express warranty period.

10          27.    Plaintiff has been damaged by Defendant's failure to comply with its obligations

11    pursuant to Civil Code section 1793.2(a)(3), and therefore brings this cause of action pursuant

12    to Civil Code section 1794.

13          28.    Defendant's failure to comply with its obligations under Civil Code section

14    1793.2(a)(3) was willful, in that Defendant knew of its legal obligations and intentionally

15    declined to follow them. Accordingly, Plaintiff is entitled to a civil penalty of two times

16    Plaintiff's actual damages, pursuant to Civil Code section 1794(c).

17              **FOURTH CAUSE OF ACTION**

18           **BY PLAINTIFF AGAINST DEFENDANT**

19    **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

20              **(CIV. CODE § 1791.1; § 1794)**

21          29.    Plaintiff incorporates by reference the allegations contained in the paragraphs set

22    forth above.

23          30.    Pursuant to Civil Code section 1792, the sale of Subject Vehicle was

24    accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code

25    section 1791.1(c), the duration of the implied warranty is coextensive in duration with the

26    duration of the express written warranty provided by Defendant.

27          31.    Due to the aforementioned defects, Subject Vehicle was not of the same quality

28    as those generally acceptable in the trade; did not pass without objection in the trade; was not

**COMPLAINT; JURY TRIAL DEMANDED**

1  fit for the ordinary purposes for which such goods are used; was not adequately contained,

2  packaged, and labeled; and/or did not measure up to the promises or facts stated on the container

3  or label.

4      32.    Plaintiff was harmed by the breach of the implied warranty of merchantability.

5      33.    Defendant's failure to comply with its obligations under the implied warranty

6  was a substantial factor in causing Plaintiff's harm. Thus, Plaintiff brings this cause of action

7  pursuant to Civil Code section 1794.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendant as follows:

a.  For Plaintiff's actual damages in an amount according to proof;

b.  For restitution;

c.  For a civil penalty in the amount of two times Plaintiff's actual damages
    pursuant to Civil Code section 1794(c);

d.  For any consequential and incidental damages in an amount according to
    proof;

e.  For remedies authorized by California Commercial Code sections 2711,
    2712, and/or 2713;

f.  For costs and expenses of the suit, and for Plaintiff's reasonable
    attorneys' fees, pursuant to Civil Code section 1794(d);

g.  For prejudgment interest at the legal rate; and

h.  For such other equitable or legal relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

## DEMAND TO CEASE ALL DIRECT COMMUNICATION WITH PLAINTIFF

Pursuant to California Rules of Professional Conduct, Rule 2-100 and Rule 4.2(a)

Mclaren Automotive Inc., its employees, representatives, or agents must cease all direct

communications with Plaintiff Yang Zhou concerning this matter. All future correspondence

1    or inquiries must be addressed to this firm's dedicated e-service email address

2    (eservice@plsfirm.com).

3           Please be further advised that any such communications with Plaintiff Yang Zhou  in

4    violation of California Rules of Professional Conduct, Rule 2-100 and/or Rule 4.2(a) will

5    result in a filing of a formal complaint with the State Bar of California.

6

7    Dated: January 12, 2026                         **PRESTIGE LEGAL SOLUTIONS, P.C.**

8                                          BY:

9                                                Michelle Yang, Esq.
                                                 Hannah C. Theophil, Esq.
10                                               Attorneys for Plaintiff,
                                                 **YANG ZHOU**
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; JURY TRIAL DEMANDED**

PRESTIGE LEGAL SOLUTIONS, P.C.
6420 WILSHIRE BLVD., SUITE 1400, LOS ANGELES, CA 90048

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

**Superior Court of California, County of Santa Clara**
**191 North First St., San José, CA 95113**

CASE NUMBER: _____    26CV484425

---

### PLEASE READ THIS ENTIRE FORM

---

***PLAINTIFF*** (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

***DEFENDANT*** (The person sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

***RULES AND FORMS:*** You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José or at https://www.scscourt.org/self_help/civil/civil_help.shtml.

- State Rules and Judicial Council Forms: https://www.courts.ca.gov/formsrules.htm
- Local Rules and Forms: https://www.scscourt.org/forms_filing.shtml and https://www.scscourt.org/court_divisions/civil/civil_rules/civil_rules.shtml

***CASE MANAGEMENT CONFERENCE (CMC):*** You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

***You or your attorney must appear at the CMC.*** *You may have the option, or be required, to appear remotely – see Local Civil Rule 8.*

---

Your Case Management Judge is: _____ Sivilla-Jones, Rafael _____ Department: __06__

The 1st CMC is scheduled for: (Completed by Clerk of Court)
Date: 07/01/2026  Time: 2:00pm  in Department: 06

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
Date: _____ Time: _____ in Department: _____

---

***ALTERNATIVE DISPUTE RESOLUTION (ADR):*** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 30 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at https://www.scscourt.org/court_divisions/civil/adr/civil_adr.shtml or call the ADR Administrator (408-828-8547) for more information.
***WARNING:*** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Michelle Yang, Esq. (SBN 325467)    Hannah C. Theophil, Esq. (SBN 334178)  Prestige Legal Solutions P.C.  6420 Wilshire Blvd., Suite 1400, Los Angeles, CA 90048  TELEPHONE NO.: (310) 758-1283    FAX NO.: (310) 933-5821  EMAIL ADDRESS: htheophil@plsfirm.com  ATTORNEY FOR *(Name):* Yang Zhou | **Electronically Filed by Superior Court of CA, County of Santa Clara, on 1/14/2026 2:20 PM Reviewed By: T. Flores Case #26CV484425 Envelope: 22274082** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Courthouse

CASE NAME:
Yang Zhou v. McLaren Automotive, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $35,000) ☐ **Limited** (Amount demanded is $35,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 26CV484425 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☑ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 12, 2026

Michelle Yang, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT B**

MCLAREN AUTOMOTIVE INC.'S NOTICE OF REMOVAL TO THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1332
DIVERSITY OF CITIZENSHIP JURISDICTION

1  **BOWMAN AND BROOKE LLP**
   Richard L. Stuhlbarg (SBN: 180631)
2  Ricardo Azcarraga (SBN: 332976)
   970 West 190th Street, Suite 700
3  Torrance, California 90502
   Tel No:    310/ 768-3068
4  Fax No:   310/ 719-1019
   eFileMclaren@bowmanandbrooke.com
5
   Attorneys for Defendant, MCLAREN
6  AUTOMOTIVE, INC.

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF SANTA CLARA**

10  YANG ZHOU, an individual,          )    **CASE NO.: 26CV484425**
                                       )
11                    Plaintiffs,      )    Assigned to: Rafael A. Sivilla-Jones
                                       )    Department: 6
12       vs.                           )
                                       )    **DEFENDANT MCLAREN AUTOMOTIVE**
13  MCLAREN AUTOMOTIVE, INC., a        )    **INC.'S ANSWER TO PLAINTIFF'S**
    Delaware Corporation,              )    **COMPLAINT**
14                                     )
                                       )    Action Filed:  January 14, 2026
15                    Defendants.      )    Trial Date:    None Set

16       Defendant McLaren Automotive Inc., for itself alone and for no other parties,

17  hereby answers Plaintiff's Yang Zhou's Complaint ("Complaint") as follows:

18       Pursuant to California Code of Civil Procedure section 431.30, McLaren

19  Automotive, Inc. hereby generally denies each and every allegation in the Complaint

20  and further denies that  has been damaged in any sum whatsoever.

21              <u>**FIRST AFFIRMATIVE DEFENSE**</u>

22       1.    Plaintiff's Complaint fails to state facts sufficient to constitute a cause of

23  action against McLaren Automotive, Inc.

24              <u>**SECOND AFFIRMATIVE DEFENSE**</u>

25       2.    Plaintiff has no restitution remedy under breach of implied warranty

26  because there was no timely revocation of acceptance after the alleged breach and

27  before a substantial change in the condition of the goods.

28  ///

1

### THIRD AFFIRMATIVE DEFENSE

2

    3.    McLaren Automotive, Inc. contends that venue is improper in this matter

3 and the action should have been brought in a different venue for the convenience of the

4 witnesses and the ends of justice. McLaren Automotive, Inc. reserves the right to file a

5 motion to stay this matter pending transfer to another venue.

6

### FOURTH AFFIRMATIVE DEFENSE

7

    4.    Plaintiff is not entitled to revocation because McLaren Automotive, Inc. is

8 not in privity of contract with Plaintiff.

9

### FIFTH AFFIRMATIVE DEFENSE

10

    5.    McLaren Automotive, Inc. is informed and believes some of Plaintiff's

11 concerns may have been caused by unreasonable or unauthorized use. (Civ. Code

12 §1794.3.)

13

### SIXTH AFFIRMATIVE DEFENSE

14

    6.    The implied warranty duration for a used vehicle is only three months.

15 Civil Code §1795.5(c).

16

### SEVENTH AFFIRMATIVE DEFENSE

17

    7.    McLaren Automotive, Inc. is informed and believes, and on that basis

18 alleges, that the subject vehicle was fit for providing transportation at all relevant times

19 hereto. Accordingly, Plaintiff is not entitled to relief for breach of the implied warranty of

20 merchantability. (*American Suzuki Motor Corporation v. Superior Court*, (1995) 37

21 Cal.App.4th 1291.).

22

### EIGHTH AFFIRMATIVE DEFENSE

23

    8.    McLaren Automotive, Inc., is informed and believes some or all of

24 Plaintiff's claims may be barred by estoppel, laches and/or lack of good faith.

25

### NINTH AFFIRMATIVE DEFENSE

26

    9.    McLaren Automotive, Inc., is informed and believes, and on that basis

27 alleges, that Plaintiff is barred in whole or in part under the doctrine of unclean hands.

28 *///*

**TENTH AFFIRMATIVE DEFENSE**

10.     McLaren Automotive, Inc., is informed and believes, and on that basis alleges, that Plaintiff has made no effort to attempt to mitigate any damages or protect the value of the subject vehicle, and as such, any damages awarded would be reduced accordingly.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.     The subject vehicle was not defective or unmerchantable when it left the possession, custody and control of McLaren Automotive, Inc. Any damage was caused by changes and alterations made to the subject vehicle by persons other than McLaren Automotive, Inc.

**TWELFTH AFFIRMATIVE DEFENSE**

12.     McLaren Automotive, Inc. is informed and believes, and on that basis alleges, that Plaintiff and/or others misused, abused, modified or and/or improperly cared for and maintained the Subject Vehicle, therefore, some of Plaintiff's nonconformities were or should have been excluded from coverage. Specifically, McLaren Automotive, Inc. alleges that after appropriate discovery, one or more of the stated specific warranty exclusions may be applicable.

**THIRTEENTH AFFIRMATIVE DEFENSE**

13.     McLaren Automotive, Inc. is informed and believes, and on that basis alleges, that the claims have been filed in an improper forum and are subject to an arbitration agreement.

**FOURTEENTH AFFIRMATIVE DEFENSE**

14.     McLaren Automotive, Inc. is informed and believes, and on that basis that Plaintiff's claims are barred, in whole or in part, because the Subject Vehicle does not qualify as a "new motor vehicle" under the Song-Beverly Consumer Warranty Act. Accordingly, Plaintiff is not entitled to remedies under the Act.

///

1

## **FIFTEENTH AFFIRMATIVE DEFENSE**

2

15.    McLaren Automotive, Inc. is informed and believes, and on that basis that

3

Plaintiff is not "buyer" 'under the Song-Beverly Consumer Warranty Act.

4

## **SIXTEENTH AFFIRMATIVE DEFENSE**

5

16.    McLaren Automotive, Inc., alleges that it may have additional affirmative

6

defenses available to it of which it is not now fully aware.  McLaren Automotive, Inc.,

7

reserves the right to assert affirmative defenses after the same shall have been

8

ascertained.

9

WHEREFORE, Defendant MCLAREN AUTOMOTIVE INC. prays as follows:

10

1.    For dismissal of Plaintiff's Complaint with prejudice;

11

2.    For judgment in favor of Defendant MCLAREN AUTOMOTIVE, INC.

12

against Plaintiff;

13

3.    For the costs of suit herein; and,

14

4.    For such other and further relief as the Court may deem just and proper

15

DATED: February 17, 2026                    **BOWMAN AND BROOKE LLP**

16

17

BY: _____

18

Richard L. Stuhlbarg
Ricardo Azcarraga

19

Attorneys for Defendant
MCLAREN AUTOMOTIVE, INC.

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
*CCP 1013A(3)*

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  402 West Broadway, Suite 1350, San Diego, California 92101.

On February 17, 2026, I served the foregoing document described as ***DEFENDANT MCLAREN AUTOMOTIVE, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT*** on all interested parties in this action by placing (   ) the original (xx) true copy(ies) thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

(  )   **BY MAIL (CCP §1013(a) and §2015.5):** As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

(  )   **BY OVERNIGHT DELIVERY/NEXT DAY DELIVERY (CCP §1013(a) and §2015.5):** I sealed such document(s) in separate envelopes for each addressee and deposited each for collection and mailing via overnight mail/next day delivery in a box or other facility regularly maintained by the U.S. Postal Service or an express service carrier, or delivered to an authorized courier or driver authorized by the U.S. Postal Service or an express service carrier to receive documents, with delivery fees paid or provided for.

(XX)   **BY ELECTRONIC SERVICE (CCP 1010.6.(b)(6):** Based upon an agreement between the parties to accept service by electronic transmission, I caused the documents to be sent to the addressees/persons at the electronic notification listed on the Service/Mailing List.

Executed on February 17, 2026, at San Diego, California.

(**X**) (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Tracy Lyon

DEFENDANT MCLAREN AUTOMOTIVE INC.'S ANSWER TO PLAINTIFF'S COMPLAINT

## SERVICE/MAILING LIST

### Yang Zhou vs. McLaren Automotive, Inc.
Santa Clara County Superior Court Case No. 26CV484425

Michelle Yang, Esq.
Hannah C. Theophil, Esq.
PRESTIGE LEGAL SOLUTIONS, PC
6420 Wilshire Blvd., Suite 1400
Los Angeles, CA  90048

**ATTORNEYS FOR PLAINTIFF**

Tel:      310/ 758.1283
Fax:     310/ 933.5821
Email:   eservice@plsfirm.com

DEFENDANT MCLAREN AUTOMOTIVE INC.'S ANSWER TO PLAINTIFF'S COMPLAINT



**Confirmation #:**   34135531
**Case Title:**   Yang Zhou vs Mclaren Automotive, Inc.

Thank you for choosing One Legal. If you have any questions about this order, please email us at support@onelegal.com.

## CASE INFORMATION

| | |
|---|---|
| **Court Name:** | Santa Clara County, Superior Court of California |
| **Court Branch:** | Santa Clara - First Street |
| **Case Title:** | Yang Zhou vs Mclaren Automotive, Inc. |
| **Case Category:** | Civil - Unlimited |
| **Case Type:** | Breach of Contract/Warranty |
| **Case #:** | 26CV484425 |

## ORDER DETAILS

| | |
|---|---|
| **Order Type:** | eFiling-eService |
| **Filing order #:** | 27486427 |
| **Date/Time Submitted:** | 2/17/2026 2:16 PM PT |
| **Matter / Billing Code:** | [962413-63471] |
| **Contact Name:** | Tracy Lyon |
| **Attorney Name:** | Ricardo Azcarraga |
| **Email Notification:** | Contact |
| **Special Instructions:** | Please file and return conformed. Thank you. |

## DOCUMENTS

| Document Type | Document Title | Pages Uploaded |
|---|---|---|
| Answer/Response/Denial/Demurrer - First Appearance | Answer/Response/Denial/Demurrer - First Appearance | 6 |

## eSERVICE RECIPIENTS

| Name | Email |
|---|---|
| Michelle Yang | eservice@plsfirm.com |
| Hannah Theophil | eservice@plsfirm.com |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT C**

MCLAREN AUTOMOTIVE INC.'S NOTICE OF REMOVAL TO THE
NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1332
DIVERSITY OF CITIZENSHIP JURISDICTION

**DEAL# 907268**
**CUST# 576828**

# CLOSED-END MOTOR VEHICLE LEASE AGREEMENT

☐ **Monthly Payment Lease**          ☒ **Single Payment Lease**

**1. PARTIES:**                                                                 Lease Date:  **07/31/2024**

| Lessor - Dealer Name | Address |
|---|---|
| **McLAREN SAN FRANCISCO** | **4192 EL CAMINO REAL PALO ALTO, CA 94306** |
| Lessee - Name | Address |
| **YANG ZHOU** | **447 JUNIPER CT  SUNNYVALE, CA 94086** |
| Lessee - Name | Address |
| **N/A** | **N/A** |

Each Lessee signing this Lease ("**you**" or "**your**") agrees to lease from the Lessor named above the vehicle described in Section 2 (the "**Vehicle**") on the terms and conditions in this Lease Agreement ("**Lease**"). Lessor intends to assign its rights and interest under this Lease to JPMorgan Chase Bank, N. A. ("**Chase**"). As used in this Lease, the terms "**us**," "**our**" and "**we**" refer to the Lessor and, after assignment, to Chase or its successors and assigns.

**2. DESCRIPTION OF LEASED VEHICLE:**

| MODEL YEAR | MAKE | MODEL | BODY STYLE | COLOR | VEHICLE ID NO. | ODOMETER |
|---|---|---|---|---|---|---|
| 2024 | MCLAREN | ARTURA | | ANTHRACITE | SBM16AEA9RW002065 | 19 |

☐ If checked, the primary use of the Vehicle is business or commercial; otherwise, it is personal, family or household use.

**3. LEASE TERM.**  The Lease Term is ___36___ months, beginning on the Lease Date (above) and ending on ___07/30/2027___ (the "**Maturity Date**").

**4. DESCRIPTION OF TRADE-IN (if applicable)**

| MODEL YEAR | MAKE | MODEL | GROSS ALLOWANCE | AMOUNT OWED | NET TRADE-IN |
|---|---|---|---|---|---|
| N/A | N/A | N/A | $ N/A | $ N/A | $ N/A |

The box below memorializes trade-in, turn-in and other individualized agreements between you and the Lessor ("Dealer"). If none indicate by entering "none" or N/A. Obligations of the Lessor set forth in this box shall be the sole responsibility of the Dealer and not Chase. If this box conflicts with any other section of this Lease, the other section of this Lease shall control.

> **N/A**

An "e" in this Lease indicates an estimate.

| Federal Consumer Leasing Act Disclosures | | | |
|---|---|---|---|
| **5. Amount Due at Lease Signing or Delivery:**<br><br>(Itemized below)*<br><br>$ __112660.37__ | **6. Lease Payments:**<br>(a) **Monthly Payment Lease:** Your first Monthly Payment of $ __N/A__ is due on __N/A__, followed by __N/A__ payments of $ __N/A__ due each following month. The total of your Monthly Payments is $ __N/A__.<br>(b) **Single Payment Lease:** Your Advance Single Payment of $ __100744.92__ is due on __07/31/2024__. | **7. Other Charges**<br>(not part of your Monthly Payment):<br><br>**Disposition Fee** (if you do not purchase the Vehicle from us): $ __895.00__<br><br>**Total:**  $ __895.00__ | **8. Total of Payments**<br>(The amount you will have paid by the end of the Lease):<br><br>$ __113555.37__ |

DEAL# 907268

**9. Amount Due at Lease Signing or Delivery:**

| | | |
|---|---|---|
| (a) | Capitalized Cost Reduction . . . . . . . . . . . . . . . . | $ 7500.00 |
| (b) | First Monthly Payment . . . . . . . . . . . . . . . . . . + $ | N/A |
| (c) | Advance Single Payment . . . . . . . . . . . . . . . . + $ | 100744.92 |
| (d) | Refundable security deposit . . . . . . . . . . . . . . . + $ | N/A |
| (e) | Initial title fees . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (f) | Initial registration fees . . . . . . . . . . . . . . . . . + $ | 2016.00 |
| (g) | Sales or use tax . . . . . . . . . . . . . . . . . . . . . + $ | 140.07 |
| (h) | Acquisition Fee . . . . . . . . . . . . . . . . . . . . . + $ | 1450.00 |
| (i) | Dealer Document Processing Charge (not a government fee) . . . . . . . . . . . . . . . . . . + $ | 85.00 |
| (j) | Prior credit or lease balance . . . . . . . . . . . . . . + $ | N/A |
| (k) | Electronic Filing Charge (not a government fee) . . + $ | 33.00 |
| (l) | CAP COST RED TAX . . . . . . . . . . . . . . . . . + $ | 684.38 |
| (m) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (n) | CA Tire Fee      (U) . . . . . . . . . . . . . . . . . . + $ | 7.00 |
| (o) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (p) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (q) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (r) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (s) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (t) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (u) | N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (v) | Total . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 112660.37 |

**10. How the Amount Due at Lease Signing or Delivery will be paid:**

| | | |
|---|---|---|
| (a) | Net trade-in allowance . . . . . . . . . . . . . . . . $ | N/A |
| (b) | Amount to be paid in cash . . . . . . . . . . . . . + $ | 105160.37 |
| (c) | Rebates and noncash credits: | |
| (1) | Manufacturer Rebate(s) . . . . . . . . . . . . . + $ | N/A |
| (2) | N/A . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (3) | EV TAX CREDIT BENEFIT . . . . . . . . . . . . + $ | 7500.00 |
| (4) | N/A . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| | | |
| (d) | Total . . . . . . . . . . . . . . . . . . . . . . . = $ | 112660.37 |

---

**11. Your Lease payment is determined as shown below.**

| | | |
|---|---|---|
| (a) | **Gross capitalized cost.** The agreed upon value of the Vehicle ($ 252520.00 ) and any items you pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) **(See Section 16 below for an itemization of this amount)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 252520.00 |
| (b) | **Capitalized cost reduction.** The amount of any rebate, net trade-in allowance, noncash credit or cash you pay that reduces the gross capitalized cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . − $ | 7500.00 |
| (c) | **Adjusted capitalized cost.** The amount used in calculating your base Monthly Payment. . . . . . . . . . . . . . . . . = $ | 245020.00 |
| (d) | **Residual value.** The value of the Vehicle at the end of the Lease used in calculating your base Monthly Payment. . . . . . . . . . . − $ | 185225.60 |
| (e) | **Depreciation and any amortized amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 59794.40 |
| (f) | **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts. . . . . . . . . . . . . . . . . . + $ | 32526.16 |
| (g) | **Total of base Monthly Payments.** The depreciation and any amortized amounts plus the rent charge. . . . . . . . . . . . . . . . = $ | 92320.56 |
| (h) | **Lease Payments.** The number of payments in your Lease. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + | 1 |
| (i) | **Base Lease Payment (Monthly or Advance Single, as applicable)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 92320.56 |
| (j) | **Sales/use tax.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | 8424.36 |
| (k) | **Other:** N/A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ | N/A |
| (l) | **Total Lease Payment (Monthly or Advance Single, as applicable)** . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 100744.92 |

Lease terms are negotiable with the Lessor. The Lessor intends to assign this Lease Agreement and may retain a portion of the Total Lease Payments.

---

**12. Early Termination.** You may have to pay a substantial charge if you end this Lease early. **The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

**13. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use, and for mileage in excess of **2500** miles per year during the scheduled Lease Term at the rate of **275** cents per mile.

**14. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ **185225.60** and a purchase option fee of $ **N/A** , for a total of $ **185225.60** . The purchase option fee does not include fees for tags, taxes or registration.

**15. Other Important Terms.** See the remainder of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, excess wear standards and any security interest, if applicable.

**16. ITEMIZATION OF GROSS CAPITALIZED COST.**

(a) Agreed upon value of the Vehicle as equipped at time of signing the Lease . . . . . . . . . . . . . . . . . . . $ **252520.00**

(b) Agreed upon value of each accessory and item of optional equipment the Lessor agrees to add to the Vehicle after signing the Lease:

   i. **N/A** . . . . . . . . . . . . . + $ **N/A**

   ii. **N/A** . . . . . . . . . . . . . + $ **N/A**

(c) Sales/use tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ **N/A**

(d) Initial title, license and registration fees . . . . . . . . + $ **N/A**

(e) Credit Life Insurance Premium . . . . . . . . . . . . . . . + $ **N/A**

(f) Credit Disability Insurance Premium . . . . . . . . . . . + $ **N/A**

(g) Service Contract . . . . . . . . . . . . . . . . . . . . . . . . . . + $ **N/A**

(h) Guaranteed Automobile Protection . . . . . . . . . . . . + $ **N/A**

(i) Acquisition Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . + $ **N/A**

(j) Prior credit or lease balance . . . . . . . . . . . . . . . . . + $ **N/A**

(k) Dealer Document Processing Charge (not a government fee) . . . . . . . . . . . . . . . . . . . . . + $ **N/A**

(l) Electronic Filing Charge (not a government fee) . . . + $ **N/A**

(m) **N/A** . . . . . . . . . . + $ **N/A**

(n) **N/A** . . . . . . . . . . + $ **N/A**

(o) **N/A** . . . . . . . . . . + $ **N/A**

(p) **N/A** . . . . . . . . . . + $ **N/A**

(q) **N/A** . . . . . . . . . . + $ **N/A**

(r) **N/A** . . . . . . . . . . + $ **N/A**

(s) **N/A** . . . . . . . . . . + $ **N/A**

(t) **N/A** . . . . . . . . . . + $ **N/A**

(u) **N/A** . . . . . . . . . . + $ **N/A**

(v) **N/A** . . . . . . . . . . + $ **N/A**

(w) Gross Capitalized Cost . . . . . . . . . . . . . . . . . . . . . = $ **252520.00**

**17. OFFICIAL FEES AND TAXES.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included with your Monthly Payments (or Advance Single Payment, as applicable) or assessed otherwise is:

$ **9248.81** e.

**This amount is an estimate. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle when a fee or tax is assessed.**

**18. WARRANTIES.** The Vehicle is subject to the manufacturer's standard new car warranty. The Vehicle is also subject to any other express warranties or guarantees disclosed here:

**N/A** .

There are no warranties, guarantees or other rights provided to you by us or the Vehicle's manufacturer other than those disclosed in this Lease.

WE DISCLAIM ALL IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT WHERE PROHIBITED BY LAW.

**19. INSURANCE VERIFICATION.** The insurance required by Section 28 of this Lease is in force on the Lease Date as follows:

Insurance Co.: **GEICO INSURANCE**

Policy No.: **4602957542**

Agent's Name: **GEICO INSURANCE OFC**

Agent's Address: **PO BOX 70776   PHILADELPHIA   PA  19176**

Phone Number: **800-207-7847**

**20. OPTIONAL INSURANCE AND OTHER PRODUCTS.** You are not required to buy any of the optional insurance products or other products listed below. You should carefully review the contracts that describe the details of any optional insurance products or other products you choose to buy. By signing this Lease, you have elected to purchase from the Lessor the following optional insurance products and other products:

| Type | Provider Name | Coverage Term/Coverage Amount | Premium/Charge* |
|---|---|---|---|
| ☐ Service Contract | N/A | N/A miles/ N/A months ..................... | $ N/A |
| ☐ Prepaid Maintenance Plan | N/A | N/A miles/ N/A months ..................... | $ N/A |
| ☐ Tire & Wheel Protection | N/A | N/A miles/ N/A months ..................... | $ N/A |
| N/A | N/A | N/A | $ N/A |
| N/A | N/A | N/A | $ N/A |
| N/A | N/A | N/A | $ N/A |
| | **You have purchased the optional products listed above for a total charge of:** .................... | | $ N/A |

\* The Dealer may retain a portion of the premiums or other charges for the optional insurance products and other products listed above.

**21. HOW THIS LEASE MAY BE CHANGED.** This Lease contains the entire agreement for the Lease of the Vehicle. We may, in our sole discretion, agree orally to requests for extensions, deferrals, or due date changes, and confirm them electronically or in writing. We may, at our option, change any provision in this Lease by giving you at least 10 days' advance written or electronic notice of the proposed change, provided that the change is at least as favorable to you as the existing provision. No other changes to this Lease are effective unless they are in a written or electronic agreement signed by you and us.

Lessee's Signature: _____    Lessee's Signature: _____ N/A _____

## LESSEE(S) NOTICES AND SIGNATURES

**BY SIGNING THIS LEASE, YOU ACKNOWLEDGE THAT THIS LEASE CONTAINS AN "ARBITRATION PROVISION" HEREIN, THAT YOU HAVE READ THE AGREEMENT TO ARBITRATE DISPUTES AND AGREE TO ITS TERMS.**

Total Loss Early Termination Payoff Balance Notice: If there is a total loss, destruction or theft of the Vehicle, the early termination payoff balance (Adjusted Lease Balance) of the Vehicle as determined under Section 30 of this Lease may be different than the actual cash value of the Vehicle as determined by your insurer of the Vehicle. Section 31 provides that you will not be obligated to pay us this amount, unless, as of the date of such total loss, you do not have in effect a physical damage insurance policy as required by Section 28. By signing this Lease, you acknowledge that you have read this notice and understand its content.

### THERE IS NO COOLING OFF PERIOD
**California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the Lessor or for legal cause, such as fraud.**

**You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

**Notice to the Lessee: (1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease; (3) Warning - Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.**

NOTICE TO LESSEE(S): BY SIGNING THIS LEASE BELOW YOU ACKNOWLEDGE THAT: (1) EACH LESSEE ACCEPTS AND IS SEPARATELY LIABLE UNDER THE TERMS AND CONDITIONS OF THIS LEASE; AND (2) YOU HAVE READ ALL PAGES OF THIS LEASE (INCLUDING TERMS APPEARING AFTER YOUR SIGNATURE, ON ADDITIONAL PAGES OF THIS LEASE), UNDERSTAND ALL OF ITS TERMS, AND WERE PRESENTED A COMPLETELY FILLED IN COPY BEFORE SIGNING BELOW. BEFORE SIGNING, YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THE LEASE YOU MAY KEEP. YOU ARE ALSO ENTITLED TO A COPY OF YOUR SIGNED LEASE.
Lessee(s) agree to all terms and conditions in this Lease.

X _____ N/A _____    X _____ N/A _____ N/A _____
Lessee Signs    Title (if a business)    Lessee Signs    Title (if a business)

## LESSOR'S SIGNATURE AND ASSIGNMENT

By signing below, Lessor: (1) accepts all terms and conditions of this Lease; and then (2) assigns all of its rights under this Lease, as well as all title and interest in and to the Vehicle, to JPMorgan Chase Bank, N.A. ("Chase"), subject to the applicable dealer agreement between the Lessor and Chase; and (3) warrants to Chase that it has verified that the insurance set forth in Section 19 is in place and complies with the requirements of this Lease.

X _____  Title: __ FI MANAGER _____  Date: _ 07/31/2024 _____
Lessor-Dealer Signs

# VEHICLE MAINTENANCE, USE AND INSURANCE

**22. PAYMENTS.** You will pay all Monthly Payments and other amounts owed under this Lease when due and as we direct. Your first Monthly Payment is due on the Lease Date. All subsequent Monthly Payments are due on the same day of each following month, except that if the Lease Date falls on the 29th, 30th or 31st day of the month, all subsequent Monthly Payments are due on the first day of each month beginning in the second month following the Lease Date. If your payment schedule above reflects that subsequent Monthly Payments are due on the 29th, 30th or 31st day of the month, then this Section controls rather than the payment schedule. If we collect sales/use tax on your Monthly Payments and you move, the amount of your Monthly Payment will change if the tax changes.

**23. LATE PAYMENTS AND RETURNED ITEMS.** You will pay us a late fee of the lesser of **$25 or 5%** of the unpaid amount of any Monthly Payment not received by us within **10 days** after its due date. This fee will be due upon demand. If any check, draft, electronic payment or other payment we receive is returned unpaid or declined for any reason, then you will not be required to pay us a returned item fee.

**24. MAINTENANCE AND OPERATING COSTS.** You will maintain, service and repair the Vehicle as recommended in the owner's manual and as needed to keep the Vehicle in good operating condition and free of physical damage. You will have any defects timely repaired according to any manufacturer's safety recall notices. You will pay all operating expenses for the Vehicle, including the cost of oil, gas, lubrication, parts, labor, storage, parking, towing, tolls and all other costs associated with operating the Vehicle. You will maintain records of all repairs and maintenance. You will not modify the Vehicle (such as adding, removing or modifying any accessories, equipment, parts, painting or lettering) without our prior written permission. Any accessories, equipment or parts installed in or on the Vehicle become our property and part of the Vehicle, even if we gave you our written permission. You will make the Vehicle available to us for inspection upon our reasonable request. Any inspection we perform will be solely to protect our interests in the Vehicle or to determine your liability under this Lease and is not a representation or warranty to you about the Vehicle's condition or safety.

**25. TITLE, REGISTRATION AND OFFICIAL FEES AND TAXES.** You will keep the Vehicle's registration and licensing current with the appropriate governmental office. Legal title to the Vehicle will be in our name and the Vehicle will be titled as we direct. You will pay when due all government taxes and fees (other than our income taxes) in connection with this Lease, including its registration, and your use and possession of the Vehicle, whether assessed on you, us or the Vehicle. Your responsibility includes, but is not limited to, any personal property taxes and fees for title, registration and licensing. You are responsible for government taxes and fees that are assessed or imposed for any period that begins before you purchase or return the Vehicle to us, even if those fees or taxes are billed or due afterwards. At termination of this Lease, you will pay, at our option, an amount we estimate for such government taxes and fees that are not yet billed. If the actual taxes or fees are less than our estimate, we will refund you the difference; if they are more, you will pay us the difference. We are not required to apply on your behalf for any exemptions or refunds of government taxes or fees. If we receive a bill for government fees and taxes, we may forward it to you for payment or we may pay it and you will reimburse us upon our demand.

**26. USE OF THE VEHICLE.** You will not use the Vehicle or allow anyone else to use it (a) unlawfully or for any illegal or wrongful purpose; (b) to transport goods or persons for hire; (c) without a valid driver license and insurance; or (d) in any manner that would not be covered by your required insurance policy or that would void any warranty. You will not take or allow others to take the Vehicle outside the United States without our prior written permission.

**27. FINES AND PENALTIES.** You will pay when due any fine, penalty, traffic ticket, parking ticket, or court costs issued in connection with the Vehicle's use (all referred to as a "**Fine(s)**"). We are not responsible for any Fines. If we receive a citation, court process or other demand for payment of a Fine during the term of this Lease, you authorize us to inform the entity issuing the Fine, its agent, toll road or toll highway company that you are responsible for paying the Fine and to give them your name, driver license number, contact information, and a copy of this Lease and any related information. At our option, we may pay any Fine that you have not paid on your behalf. You must reimburse us for any such amount immediately upon demand.

**28. INSURANCE.** You must keep the Vehicle insured with the following minimum insurance coverages in addition to any other insurance required by law: (a) **$100,000** for bodily injury to one person: **$300,000** for bodily injury for any one accident, and **$50,000** for property damage; and (b) collision, fire, theft and comprehensive coverage covering the Vehicle's actual value with a deductible of no more than $1,000. Such policies must not exceed a restrict coverage if you were to drive the Vehicle, or when the driver is someone you allow to drive the Vehicle or who you can reasonably foresee may drive the Vehicle. Chase and/or other persons specified by Chase must be listed as loss payee and additional insured. You will not operate the Vehicle if the insurance coverage has lapsed or has been cancelled. The insurance policy must state that we will be given at least 10 days' advance notice of any cancellation, reduction, or other material change in coverage. You may provide the insurance through any insurer reasonably acceptable to us. You will give us written proof of coverage upon our request. You will remain liable to us for any loss we suffer because your insurer denies a claim. You authorize us to settle any claim for loss or damage to the Vehicle, and to collect insurance proceeds, directly with or from your insurer, as well as to endorse your name on and negotiate any insurance check or draft. You will cooperate with us in collecting insurance proceeds, including providing or signing any releases or other documents. You will not settle any insurance claim or accept any settlement payment from your insurer without first obtaining our written permission. If you fail to maintain the required insurance we may, but are not required to, obtain it to protect our interests and you will reimburse us for the insurance premium we pay.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

# DEFAULT AND LEASE TERMINATION

**29. DEFAULT**

(a) **Events of Default.** You will be in default if: (1) you fail to pay any Monthly Payment or other amount you owe under this Lease when due; (2) you gave any false or misleading information when applying for this Lease; (3) you become insolvent or the subject of a bankruptcy proceeding; (4) you are dissolved (if an entity), die or become incompetent and there is no surviving Lessee; or (5) you break any other promise in this Lease.

(b) **Our Remedies.** If you default, in addition to any other rights we have, we can do one or more of the following at our option and without notifying you, except for any notice required by law: (1) take any reasonable measures to correct the default or to save us from loss, in which case you will reimburse us upon demand for our expenses; (2) terminate this Lease and your rights to possess and use the Vehicle; (3) take possession of the Vehicle by any lawful method or manner; (4) cancel any optional product or service you purchased as part of this Lease and apply any refunds for unearned premiums or charges to amounts you owe under this Lease; (5) or pursue any other remedy at law or in equity.

(c) **Default Charges:** In addition to all other amounts you owe under this Lease, including, but not limited to, any liability under Sections 27, 30, 31 or 33, as applicable, you will pay us all of the following, as permitted by law: collection costs; court costs; the reasonable expenses we incur in connection with locating, retaking (or attempting to retake), storing and transporting the Vehicle and the actual costs for selling the Vehicle and preparing it for sale, as permitted by law and, if the Lease is referred to attorneys who are not our salaried employees, reasonable attorneys' fees we incur to enforce this Lease.

**30. EARLY TERMINATION**

(a) **Early Termination Liability.** If you are not in default, you may end this Lease at any time before the end of the Lease Term by returning the Vehicle to a place we specify. We may end this Lease at any time before the end of the Lease Term if you default. If you or we end this Lease before the beginning of any Monthly Period (defined below) and the Vehicle is (i) not a Total Loss and (ii) is not subject to a Dealer Purchase Program (see below), then we will assess an Early Termination Charge equal to the Adjusted Lease Balance minus the Vehicle's Fair Market Value. For a Monthly Payment Lease, if you have returned the Vehicle as required or we have recovered the Vehicle, then the Early Termination Charge will not exceed the sum of all remaining Monthly Payments that would otherwise have been due from the early termination date to the Maturity Date and any End-of-Term Liability under Section 33. Your total early termination liability will equal this Early Termination Charge plus any other amounts that have become due and are unpaid at termination (including, for a Monthly Payment Lease, any unpaid Monthly Payments due before termination), less any credits to your account. We will credit your account for any remaining Refundable Security Deposit (see Sections 9(d) and 38) and any refunds we may receive from the cancellation of any Optional Insurance or Other Products (see Section 20). For a Single Payment Lease, we will credit your account for your portion of the Single Payment that is not allocated to the rent charge earned or Depreciation when calculating the Adjusted Lease Balance. Additionally, for a Single Payment Lease, your early termination liability under this Section will not exceed the amount of any End-of-Term Liability under Section 33 after applying any credits for any remaining Refundable Security Deposit and any refunds we receive from the cancellation of any Optional Insurance or Other Products. If any of these credits result in a negative early termination liability, then the excess credits will be refunded to you. If the Vehicle is a Total Loss, your early termination liability will be determined under Sections 28 and 31 rather than under this Section. Further, if you are in default and the Vehicle has not been returned as required or recovered by us, then we will use the amount that you would have owed if you had exercised your purchase option under Section 32, including the purchase option fee, as the Adjusted Lease Balance when calculating the Early Termination Charge. (If you pay all that you owe, including this amount, then we will sell the Vehicle to you under Section 32.) If you return a Vehicle early to a dealer that we specify, that dealer may choose to purchase the Vehicle from us pursuant to a dealer purchase program between the dealer and us ("Dealer Purchase Program"). If your Vehicle is purchased pursuant to a Dealer Purchase Program, then you will be notified and you will not be assessed an Early Termination Charge. We are not required to sell the Vehicle under a Dealer Purchase Program and the dealer to which you return the Vehicle may choose to purchase the Vehicle from us without a Dealer Purchase Program applying or may choose not to purchase the Vehicle. In such cases, the Early Termination Charge above will apply.

(b) **Calculation of the Adjusted Lease Balance.**

**(1) Calculation of the Monthly Rent Charge:** We earn a portion of the total rent charge (see Section 11(f)) during each month of the Lease Term. To calculate the rent charge earned each month, we divide the Lease Term into monthly periods (each "Monthly Period"). For a Monthly Payment Lease, the first Monthly Period begins on due date of the first Monthly Payment (see Section 6(a)) and subsequent Monthly Periods begin on the due date of each subsequent Monthly Payment. For a Single Payment Lease the first Monthly Period begins on due date of the Single Payment (see Section 6(b)) and subsequent Monthly Periods begin on the same day of each subsequent month. We figure the monthly rent charge earned using the "Constant Yield Method." When figuring the monthly rent charge, monthly rent charges are earned in advance on the first day of each Monthly Period. The rent charge for a Monthly Period equals (i) the constant rate implicit in the Lease multiplied by (ii) the Balance Subject to Rent Charge. The sum (iii) the constant the Adjusted Capitalized Cost and the sum of (i) all Depreciation for each prior Monthly Period plus (ii) the first Monthly Period equals the difference between the Adjusted Capitalized Cost and the sum of (i) all Depreciation for each prior Monthly Period plus (ii) the first Monthly Payment. In the case of a Single Payment Lease, the Balance Subject to Rent Charge is determined by subtracting from the Adjusted Capitalized Cost the Residual Value (see Section 11(d)) the total rent charge scheduled to be earned over the Lease Term (see Section 11(f)) and adding to the difference all rent charges accrued during the preceding Monthly Periods.

**(2) Depreciation:** At the beginning of each Monthly Period, we allocate a portion of the Monthly Funds to the rent charge earned based on the calculation above, and the rest to monthly depreciation and other amortized amounts ("Depreciation"). For a Monthly Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Monthly Payment due. For a Single Payment Lease, the "Monthly Funds" for a Monthly Period is equal to the base Single Payment divided by the number of monthly periods during the Lease Term. (Your base Monthly or Single Payment is the payment before taxes and other non-amortized amounts (see Section 11(i)).

**(3) Adjusted Lease Balance:** The Adjusted Lease Balance equals the Adjusted Capitalized Cost minus the sum of all accrued monthly Depreciation for each Monthly Period before termination of this Lease and the Monthly Period in which this Lease terminates.

**(c) Fair Market Value.** The Vehicle's Fair Market Value is equal to the net sale price we receive for the Vehicle at a wholesale sale, after deducting from the gross sale price the reasonable expenses we incur to transport, recondition, prepare for sale and sell the Vehicle. Alternatively, if you obtain an appraisal of the Vehicle's wholesale value, at your expense, within 30 days prior to or 10 days after the termination date from a professional independent appraiser agreed to by us, then we will use the appraised value as the Vehicle's Fair Market Value. You and we also may agree in writing to a specific amount for the Vehicle's Fair Market Value. If the Vehicle's Fair Market Value is negative, then we treat the Vehicle's Fair Market Value as zero. Additionally, the Vehicle's Fair Market Value is zero if the Vehicle is not returned to us.

**31. DAMAGE, LOSS OR DANGER TO THE VEHICLE.** You will keep the Vehicle free from any liens, encumbrances or claims, whether voluntary or involuntary. You will not allow the Vehicle (and will not allow others to take actions causing the Vehicle) to become damaged, destroyed, stolen, lost, confiscated, abandoned, or subjected to undue peril. You will notify us and your insurance company within 24 hours if any of these events occurs.

**(a) Liability for Total Loss.** You are responsible for the risk of loss to the Vehicle. If the Vehicle is lost, stolen or damaged beyond repair (a "Total Loss"), we will terminate this Lease and, except for amounts not under Subsection (b) below, you will pay us promptly upon our demand the Adjusted Lease Balance (see Section 30(b)) less credits for (i) any remaining Refundable Security Deposit (Section 9(c) and 38), (ii) any refunds we receive from the cancellation of any Optional Insurance or Other Products (Section 20), and (iii) any other amounts we receive in payment for the loss, plus any other amounts due under this Lease at termination. For a Single Payment Lease, we also will provide a credit for any portion of the Single Payment that is allocated to the earned monthly rent charge or monthly Depreciation when calculating the Adjusted Lease Balance.

**(b) Conditional Gap Waiver.** If the Vehicle is a Total Loss and you had in place the insurance required by this Lease on the date of loss, we will waive any portion of the Adjusted Lease Balance remaining after we subtract the payment we receive from your insurer for the loss (the "Gap Amount"). However, you will still owe us any other amounts due under this Lease plus any amounts your insurer deducts from the Vehicle's actual cash value (for example, for any pre-existing damage) and an amount equal to your insurance deductible when paying the claim. You will be in default and our waiver of the Gap Amount in this Subsection (b) will not apply if you did not have the required insurance in place, you do not otherwise comply with Section 28, or your insurer denies any part of the claim.

**32. PURCHASE OPTION.** You may purchase the Vehicle from us if you are not in default, on an AS-IS, WHERE-IS basis, at any time before or at the end of the Lease Term. To purchase the Vehicle, you must pay the sum of (a) the amount in Section 14 if you purchase the Vehicle at the end of the Lease Term, or the Adjusted Lease Balance plus the purchase option fee in Section 14 if you purchase it before the end of the Lease Term, plus (b) any related official fees, such as sales tax, other taxes, title, tags, license and registration we are required to collect, plus (c) any past due Monthly Payments and any other amounts you owe under this Lease. If you purchase the Vehicle, you will transfer title, re-register the Vehicle and remove and return the license plates (if required by law) within 30 days after purchase or any shorter time required by law. You will sign any additional documents necessary to effect the purchase. We may, at our option, apply any credits or security deposit under this Lease towards the purchase price.

**33. END-OF-TERM LIABILITY.** Your right to use the Vehicle ends on the Maturity Date. If this Lease ends after the last Monthly Payment is due, then we will treat this Lease as if it terminated at the end of the Lease Term and not as if it ended early. However, if the Vehicle is a Total Loss, Section 31 applies. If you do not purchase the Vehicle, at the end of the Lease Term you must return the Vehicle to a place we specify, call us within one business day of returning the Vehicle, and pay us the following end-of-term liability upon our demand: (a) the Disposition Fee disclosed in Section 7; plus (b) any excess mileage charges under Section 13; plus (c) any excess wear and use under Section 34; plus (d) all other amounts due and unpaid under this Lease. However, if the Vehicle is purchased under a Dealer Purchase Program (see Section 30(a)), then you will not owe the Disposition Fee, any excess mileage charge, and any excess wear and use. You will not keep the Vehicle past the end of the Lease Term unless we agree to extend the Lease Term. For each full or partial Monthly Period after the end of the Lease Term that you have not returned or purchased the Vehicle, you will pay us an additional amount equal to one Monthly Payment (if this is a Single Payment Lease, this monthly amount equals the Advance Single Payment disclosed under Section 6(b) divided by the number of months in the Lease Term) due at the beginning of each Monthly Period, plus a late fee under Section 23 if paid late. However, if you return the Vehicle within 10 days of the Maturity Date, we will not require you to pay an additional Monthly Payment (or the equivalent for a Single Payment Lease). Our demand for or acceptance of these payments does not give you the right to keep the Vehicle and does not constitute our agreement to extend the Lease Term. Additionally, if you have not returned or purchased the Vehicle by the Maturity Date as required, then we may declare you in default and, if more than 10 days after the Maturity Date, charge you the amount that you would have owed if you had exercised your purchase option at the end of the Lease Term (see Section 32) as damages for failure to return the Vehicle. You agree to pay this amount in full, and if you do pay, then we will sell the Vehicle to you under Section 32. We may charge you this amount even if you have made one or more payments to us after the end of the Lease.

**34. EXCESS WEAR AND USE.** You will not subject the Vehicle to more than normal wear and use. If you do not purchase the Vehicle, at the end of the Lease Term you will owe us for excess mileage under Section 13, plus our actual or estimated cost to repair or replace any excess wear and use to the Vehicle, whether or not we make repairs. We will total the costs of items (a) through (f), as follows, and you will owe us any portion of the total in excess of costs expected based on normal wear and use, plus the other amounts set forth at the end of this Section: (a) holes, tears, burns, stains, strong odors or excessively worn areas in the carpet, other interior surfaces or convertible top; (b) scratches, chips, dents, pits, rust, holes or cracks in the wheels or exterior surfaces, windshield or other glass surfaces or metal work; (c) cracked, broken or missing windows, doors, lights, trim, mirrors or antennae; (d) missing, damaged or nonworking mechanical equipment, safety or emissions control equipment, electrical or other parts or accessories; (e) damage to the Vehicle's frame or alignment; (f) damage due to improper, poor quality or incomplete repairs or paint work. You also will remain liable to us for the full cost of any such items resulting from intentional or willful abuse or misuse. In addition, you will owe us the full cost of any missing, damaged or mismatched tires (including spare), any tire that has less than 1/8th inch tread at its lowest point or that is not comparable in quality to the original equipment, and any missing manual or missing or nonworking keys or remote entry devices.

## ADDITIONAL TERMS AND CONDITIONS

**35. INDEMNITY AND NO INTENDED THIRD PARTY BENEFICIARY RIGHTS.** Except as provided in this Lease, you will hold us harmless and indemnify us from any and all claims, liability, loss and expense (including court costs and attorneys' fees) arising from or related to the use, maintenance, condition or possession of the Vehicle, or your failure to perform any obligation in this Lease. This Lease shall not be deemed to confer any rights or remedies upon any person, including but not limited to any rights to enforce these terms, other than by Chase, and its respective successors and assigns.

**36. ODOMETER STATEMENTS.** Whether or not you purchase the Vehicle, when this Lease terminates you must give us a written statement regarding the odometer reading as required by federal and/or state law. Failure to complete this statement upon our request or giving false information may result in fines and/or imprisonment.

**37. ASSIGNMENT.** This is a true Lease and you will not own any equity in the Vehicle unless you exercise the purchase option in Section 32. **You will not assign, sublease or transfer any interest in the Vehicle or your rights or obligations under this Lease without getting our written permission first.** After any such assignment, you will remain fully responsible for the performance of this Lease even if we gave you our permission. We may assign or transfer any interest in the Vehicle or our rights and obligations under this Lease without your permission and without notifying you first.

**38. SECURITY DEPOSIT.** You will not earn any interest, benefit, increase or profits on any security deposit. You further agree that we may retain any interest, benefit, increase or profits we earn on your security deposit or other property in which we have a security interest. We may commingle your security deposit with our other funds. We may use your security deposit to pay or satisfy any amount or obligation you fail to pay or satisfy under this Lease. After this Lease terminates, we will refund to you any unused portion of your security deposit.

**39. NOTICES AND ADDRESS CHANGES.** You will mail or deliver any written notices to us in connection with this Lease to the address we provide for the type of notice or, if none, our address for general correspondence. Notices sent to an address we designate for payments only are not effective. If your phone number, or any address we have for you or the Vehicle, changes or is incorrect, you will give us an updated phone number or address within **15 days**. We may send you any notices, bills, correspondence and any refunds owed to you to your address in Section 1, or to any other address you provide us or that we may obtain directly or indirectly from the U.S. Postal Service. We may also send you notices, bills and correspondence electronically (i) at any email address you have provided to us, or (ii) by posting the notice, bill or correspondence on a website and sending you a notice to your email address telling you that the communication has been posted, describing the general purpose of the communication and its location, and providing instructions on how to view it. Delivery of any notice, bill or correspondence in this manner will be effective when we send the email. If the California Department of Motor Vehicles has your address, you have not requested confidentiality of your address and by signing this Lease you waive the provisions of Section 1808.21 of the California Vehicle Code and authorize the California Department of Motor Vehicles to furnish your address to the holder of this Lease until this Lease is paid in full.

**40. USE OF TELEPHONE, EMAILS AND TEXT MESSAGES.** In addition to any other lawful method of communication, we and/or agents and representatives may contact you regarding the origination, servicing, and collection of amounts due under this Lease at any telephone number or email address we give us or where we believe we may reach you. You give us and our agents and representatives permission to use automatic telephone dialing systems to call you, send you text messages or leave you artificial or prerecorded voice messages, at any telephone number you give us, including a telephone number for a cellular phone or mobile device or any number we obtain for you from another source. In addition, you give us permission to monitor or record telephone calls between you and us regarding this Lease.

**41. CONSUMER REPORTS AND VERIFICATION.** You agree that we may obtain one or more consumer reports (including credit reports) about you from consumer reporting agencies in connection with your application for this Lease and for the purpose of taking collection action, updating, renewing, refinancing, modifying or extending this Lease. You agree that we may also verify your employment, income, assets and debts, and you hereby authorize anyone receiving a copy of this Lease to give us such information.

**NEGATIVE CREDIT REPORTING NOTICE: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**42. ADDITIONAL INFORMATION AND DOCUMENTS.** Promptly upon our reasonable request, you will (a) give us any additional documents and information to allow us to verify any information provided in connection with your application for this Lease, in connection with the Vehicle or your compliance with this Lease, and (b) sign any documents necessary to effect this Lease, including, but not limited to, motor vehicles department forms.

**43. JOINT LESSEES.** If there is more than one Lessee, each Lessee is jointly and severally liable under this Lease. If we release, waive or delay in the enforcement of our rights as to one Lessee, then that will not affect our rights as to the other Lessee. We may, in our sole discretion, pay any refund or other amounts we owe you in connection with this Lease jointly to both Lessees or individually to either Lessee. Also, you agree that notice provided by us to any Lessee is effective notice to all Lessees, including you, except as otherwise required by applicable law. We may also, in our sole discretion, allow one Lessee to exercise any right under this Lease with respect to the Vehicle without the other Lessee's consent or participation and any authorization provided by any Lessee, is effective and binding on you even if you did not provide such authorization.

**44. ASSIGNMENT OF UNEARNED PREMIUMS AND CHARGES.** You assign to us any refunds of unearned premiums or charges for any insurance or optional products or services purchased as part of this Lease.

**45. LIMITED POWER OF ATTORNEY.** You hereby appoint us or our agent as your attorney-in-fact to do the following: (a) settle any insurance claim related to the Vehicle, (b) endorse your name on any check or draft we receive from your insurer or from any other party for damage to or loss of the Vehicle, and (c) to sign your name to any title, registration or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable as long as we have an interest in the Vehicle.

**46. ELECTRONIC EXECUTION, AUTHORITATIVE COPY AND CONVERSION TO PAPER.** This Lease and any other associated documents may be signed on paper, or signed electronically as an electronic record. (a) If this Lease is signed electronically as an electronic record, then at our option an authoritative electronic copy of this Lease ("Authoritative Copy") may be converted to paper and marked as the original by us (the "Paper Original"). Unless and until we create a Paper Original, the Authoritative Copy of this Lease: (i) will reside in a document management system designated by us or our custodian for the storage of authoritative copies of electronic records, and (ii) is held in the ordinary course of business. (b) In the event we convert the Authoritative Copy to a Paper Original, you acknowledge and agree that: (i) the electronic signing of this Lease also constitutes issuance and delivery of the Paper Original, (ii) the electronic signature(s) associated with this Lease, when affixed to the Paper Original, constitutes a legally valid and binding signature on the Paper Original, and (iii) your obligations will be evidenced by the Paper Original after the conversion.

**47. GOVERNING LAW.** Except as otherwise set forth in this Lease, this Lease will be governed by the laws of the state of the Lessor's address (as set forth in Section 1 of this Lease) and federal law, including any applicable federal law relating to the use of electronic records and signatures.

**48. GENERAL.** If we waive or delay in enforcing any of our rights, it will not be considered a waiver of any of our other rights or later rights. You acknowledge that we have not given you any tax information or advice about this Lease and that we are not passing to you any tax credit or benefit on the Vehicle. Except as otherwise set forth in the Arbitration Provision, if any provision of this Lease is determined to be unenforceable, that provision will be deemed modified as necessary to comply with law and to make the provision enforceable, and all remaining provisions of this Lease will remain in full effect. We may, at our option, apply any refunds we owe you or credits you have under this Lease to reduce any amounts you owe us under this Lease. We are not required to make any credit or refund to you in connection with this Lease if the amount of the credit or refund is less than $1.00.

---

### ARBITRATION PROVISION: PLEASE REVIEW AS THIS AFFECTS YOUR LEGAL RIGHTS

You and we agree that upon the election of either of us, any claims or disputes relating in any way to your lease account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims." However, claims relating to the scope, enforceability or validity of this agreement to arbitrate are for a court of competent jurisdiction to decide. The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis. Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Arbitration procedures are generally simpler than court rules, and discovery can be more limited. Certain rights that you have in court may not be available in arbitration.

YOU AND WE AGREE NOT TO: 1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING; 2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT). UNLESS ALL PARTIES AGREE; 3) BE PART OF, OR BE REPRESENTED IN. ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR 4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The single arbitrator will conduct the arbitration and decide the Claim in accordance with all applicable substantive law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any arbitration decision and award will be final and binding on the named parties and enforceable by any court having jurisdiction.

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law.

Rules and forms may be obtained from, and Claims may be filed with JAMS (800.352.5267 or jamsadr.com) or the AAA (800.778.7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

---

Lessee Initials Here _____   Co-Lessee Initials Here __**N/A**__

108382*1*VPA-FI

09/20/2024   04:26 pm

**FORM NO. CAFL-CALIFORNIA-LZR/E (REV. 11/23)**

© 2023 JPMorgan Chase Bank, N.A. Member FDIC